The STATE ex rel. REYNOLDS

v.

INDUSTRIAL COMMISSION of Ohio et al.

[Cite as *State ex rel. Reynolds v. Indus. Comm.* (1993), 90 Ohio App.3d 313.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–746.

Decided Sept. 16, 1993.

*Spitler & Williams–Young Co., L.P.A.,* and *William R. Menacher,* for relator.

*Lee Fisher,* Attorney General, and *Michael O'Grady,* Assistant Attorney General, for respondent Industrial Commission of Ohio.

WHITESIDE, Judge.

This original action in mandamus was, pursuant to Civ.R. 53 and Loc.R. 11 of this court, referred to a referee, who has rendered a report recommending that the requested writ be denied, to which relator, Acie Reynolds, has filed objections contending that the referee's report should not be adopted because (1) the decision of respondent Industrial Commission fails to meet the requirements of *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, because it contains no explanation as to why the nonmedical factors do not so impact upon the medical impairment as to cause permanent total disability; (2) even if the decision did comply with *Noll,* it is not supported by evidence; and (3) respondent commission is statutorily required to promulgate guidelines.

With respect to the third objection, the report of the referee is adopted since the issue has been disposed of by *State ex rel. Blake v. Indus. Comm.* (1992), 65 Ohio St.3d 453, 605 N.E.2d 23, which denied a writ under similar circumstances.

However, we find the first objection to have merit. The commission decision which is the subject of this action does not comply with *Noll* in that it does not set forth reasoning explaining the basis for the Industrial Commission's decision. The commission order in pertinent part states:

"The claimant is a 62 year old, has a 7th grade education and has worked as a pipefitter [*sic* ] and machine repairer. Although his education is limited, his prior work experience would appear to be skilled and would probably have some transferable skills. * * * It would appear with his skilled work experience the claimant retains the skills to retrain for work within the medical restrictions of Doctors Hartwig, and Hawkins."

The key words in this decision are "appear to be skilled" and "probably have some transferable skills." The phrase "transferable skills" is essentially boiler-plate language which has no independent significant meaning without reference

to how the skills could be transferred from one job to another. There simply is no explanation of how the work of a pipe fitter or a machine repairer (jobs which the medical evidence relied upon indicate relator no longer can perform) can be transferred to another job. Similarly, the word "skilled" standing alone has little significance. In a broad sense, a pipe fitter is "skilled" if he is able to perform his work well. This merely means a person may be "skilled" at a given job, but the breadth of the skill is limited. There is no indication in the report of any wide range of skills possessed by relator enabling him to perform a wide range of jobs. The use of the words "skilled" and "transferable skills" leaves us as much in the dark as to the reasoning of the commission as we would be without those words being present. The objection on this ground is well taken.

■ The second objection is based upon the lack of evidence. Assuming that somehow the commission's decision could be construed to comply with the requirements of *Noll*, there is simply no evidence relied upon by the commission supporting the conclusion with respect to the nonmedical factors. The commission report refers to no evidence other than the reports of Drs. Steiman, Hartwig, and Hawkins, and then indicates that the medical restrictions set forth by Drs. Hartwig and Hawkins are those relied upon. These restrictions are delineated in the decision as being "restrictions on prolonged bending, stooping, lifting, and similar activities." Dr. Hawkins opined that relator could not perform the duties of a pipe fitter, but, from a medical standpoint, "could do some work in a standing or walking position with limitations on bending, stooping, lifting, pushing, pulling and similar duties." However, he also opined that "[r]ehabilitation at this age, in the presence of the structural abnormalities in the low back, would be impracticable." It is unclear whether Dr. Hawkins is talking from a medical-impairment standpoint or from a nonmedical-factor standpoint.

Dr. Hartwig stated similar restrictions, except that he felt that relator could perform employment in "a sitting type of job," but that "lifting or forward bending type duties are not advisable." He further opined that "rehabilitation from a medical standpoint is appropriate, as long as restriction from prolonged standing, forward flexion, bending and lifting could be enforced." He does not comment upon the impact of nonmedical factors upon rehabilitation.

In short, there simply is no evidence upon which the respondent commission indicates it relied supporting its conclusion that the nonmedical factors do not so impact upon the thirty percent medical impairment found as to prevent relator from working at sustained remunerative employment. There may well be some evidence before the commission which justified its conclusion that a thirty-percent medically impaired, sixty-two-year-old former pipe fitter and machine repairer with only a seventh grade education and who no longer can perform the duties of a pipe fitter or machine repairer can perform some type of sustained remunera-

tive employment. However, the commission has not set forth any evidence relied upon supporting this conclusion, nor has it explained how it reached its conclusion from the evidence it did rely upon.

The only other evidence referred to was the report of Dr. Steiman, which also does not purport to constitute evidence as to the impact of the nonmedical factors upon the medical impairment. As set forth in paragraph six of the referee's report to this court, the statement of facts prepared for respondent commission states in part: "4. Special Training and/or Special Vocational Skills: None." This, likewise, does not support the finding that relator, with his age and education and past work experience as a pipe fitter and machine repairer, which he no longer can perform, is so skilled that, despite his thirty-percent medical impairment, he is capable of sustained remunerative employment at some other "skilled" job.

Accordingly, the first two objections are well taken, but the third is not. The findings of fact in the referee's report are approved and adopted as those of the court, but the conclusions of law and recommendation are not accepted other than with respect to the statutory duty of the respondent commission to promulgate guidelines. For these reasons, a limited writ of mandamus will issue, ordering respondent Industrial Commission to vacate its order denying relator's application for permanent total disability compensation and to issue a new order determining that application, with an explanation of the reasoning for the decision and of the evidence relied upon supporting such decision in compliance with *Noll, supra.*

*Objections sustained in part,*
*limited writ granted.*

PETREE and DESHLER, JJ., concur.